B. F. SLENKER, Appellant, vs. ED C. ENGEL, Appellee.

*Opinion filed June 20, 1911.*

1. ELECTIONS—*ballot cannot be counted if no effort was made to comply with the law.* While the intention of the voter should be given effect when it is possible to do so without nullifying the statute, still there must be an honest effort by the voter to observe the law and to express his intention in accordance therewith.

2. SAME—*single line in circle is not sufficient.* A ballot having but a single line at the head of the ticket cannot be counted for candidates on that ticket, there being no crosses marked in the squares opposite their names.

3. SAME—*when a ballot cannot be counted for either candidate.* A ballot having the figures "½" distinctly marked in the squares opposite the names of the republican and democratic candidates for a county office cannot be counted for either candidate, although a cross is marked in the circle at the head of one of those tickets.

4. SAME—*a cross after name of candidate is not sufficient.* A ballot having no mark in the circle at the head of any ticket or in any of the squares but having crosses marked after the names of certain candidates cannot be counted, as the ballot does not show any attempt to comply with the law.

5. SAME—*mark placed upon ballot by election officers is not a distinguishing mark.* A distinguishing mark is one placed upon the ballot by the voter by which it may be identified, and a mark placed on the ballot by the election officers, either before or after the ballot is voted, is not such a distinguishing mark as requires the exclusion of the ballot on the count.

6. SAME—*the erasure of certain names on ballot is not a distinguishing mark.* The erasure of the names of certain candidates by drawing pencil lines through them is not such a distinguishing mark as precludes the counting of the ballot for candidates properly voted for and whose names are not erased.

7. SAME—*figures placed on ballot during the count are not distinguishing marks.* Figures placed upon ballots by some person other than the voter, apparently by the election officers during the count of the ballots after the election, are not distinguishing marks.

8. SAME—*cross appearing by mere indentation of paper is sufficient.* A ballot having no mark except a cross plainly indented in the paper in the circle at the head of one ticket, having apparently been made with a broken pencil or some hard substance leav-

ing no color on the paper, is properly counted as a straight vote for that ticket.

9. SAME—*ballot blurred by being fed through the press twice should be counted if properly marked.* Where a ballot is blurred by being fed through the press twice the ballot may properly be thrown out by the judges as a spoiled ballot before it is voted, but if it is properly endorsed by the judges and marked by the voter it should be counted.

10. SAME—*when a ballot with portions of the circles missing should be counted.* In a contest between the republican and democratic candidates for a county office, if the republican and democratic tickets are perfect and the ballot is properly marked for one of those candidates it should be counted for him, even though portions of the circles at the head of two other tickets on the ballot are missing, as the result of not properly placing the paper on the printing press.

11. SAME—*when ballot should not be rejected as having a distinguishing mark.* A ballot having the initials "W. M. C." on the back, apparently made by one person, should not be rejected as having a distinguishing mark, where one of the judges endorsed many of the ballots with the initials "W. M.," although he testified that he did not know how the "C" came to be on the ballot.

12. SAME—*cross in circle is sufficient if lines intersect within the circle.* A cross in the circle is sufficient if there is a point within the circle where the lines intersect, even though there are a number of marks in the circle indicating that the voter was nervous and unable to make a straight line.

13. SAME—*when marks in square are sufficient.* A mark in the form of the capital letter "T" in the square opposite a candidate's name is sufficient; and so also is a cross in the square which has one line much shorter than the other.

14. SAME—*when figures placed by voter on ballot are not distinguishing marks.* Ballots properly marked for a candidate for a county office should be counted for him, even though the voters, in attempting to divide or cumulate their votes for candidates for the legislature, placed figures in the squares opposite their names or after the names, and, in one instance, before the name of a candidate for trustee of the University of Illinois.

15. SAME—*blur resulting from attempt to erase cross in square is not a distinguishing mark.* A blur over the square in front of a candidate's name, resulting from an attempt by the voter to erase the cross after changing his mind and voting for the other candidate, is not a distinguishing mark and the ballot should be counted for the candidate voted for.

16. SAME—*ballot having no initials of any judge endorsed on it cannot be counted.* A ballot having only one letter of the judge's initials endorsed upon it may be counted, but ballots having no initials of any judge endorsed upon them are not in compliance with the statute and cannot be counted for anyone.

CARTER, C. J., and DUNN, J., dissenting.

COOKE and FARMER, JJ., specially concurring.

APPEAL from the County Court of Woodford county; the Hon. JOHN H. GILLAN, Judge, presiding.

SIGMUND LIVINGSTON, and ORMAN RIDGELY, for appellant.

E. J. RIELY, and J. A. RIELY, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

At the election held November 8, 1910, in Woodford county, Ed C. Engel was the democratic candidate for county treasurer and B. F. Slenker was the republican candidate for said office. The election returns showed that Engel received 2126 votes and that Slenker received 2077 votes for county treasurer, and George Shuman, candidate on the prohibition ticket for said office, received 42 votes. A certificate of election was issued to Engel, and Slenker filed a petition in the county court of said county to contest the election, making Ed C. Engel the sole defendant. A motion was made and overruled to dismiss the petition because Shuman was not made a party defendant. A recount of the ballots was entered upon before the county judge of Woodford county, but before the count was completed the judge's term of office expired and a change of venue was granted to the Hon. John H. Gillan, judge of the county court of Iroquois county. When the cause was transferred to Judge Gillan he proceeded to hear it *de novo* and all of the proceedings had before the other judge seem to have been disregarded. All of the rulings complained

of, including the motion to dismiss for want of proper parties, are in the record as made before Judge Gillan. Upon a re-count of the ballots, after all objections to disputed ballots had been disposed of, the court found that Engel had received 2114 votes, Slenker 2112 votes and Shuman 46 votes, and that there were 181 votes which should not be counted for either of the contestants. The court entered an order declaring Engel duly elected, to which Slenker preserved exceptions and by his appeal has brought the record to this court for review.

Appellee has assigned no cross-errors upon the record, hence the ruling of the court upon the motion to dismiss for want of proper parties is not presented for our consideration.

The only errors complained of by appellant are based on rulings of the court upon certain disputed ballots. He contends that certain ballots were excluded which should have been counted for him, and that certain other ballots were erroneously counted for appellee. The original ballots have been properly certified and sent up with the record for our inspection.

Appellant contends that ballot "Exhibit A," in Green township, should have been counted for him and that the court erred in rejecting the same. The ballot has one heavy line drawn through the center of the republican circle, made with an indelible blue pencil. There is nothing in the republican circle that resembles a cross of any character. The one heavily-shaded line drawn from the top to the bottom of the republican circle is the only trace of a mark to be found upon the republican ballot. In the squares opposite the names of the democratic candidates for sheriff and county clerk are blue pencil marks, indicating that the voter desired to vote for those candidates on the democratic ticket. There are no other marks of any kind or character anywhere to be found upon said ballot. Appellant contends that there is a cross in the republican circle and that the

same can be seen under a magnifying glass, and that therefore the ballot should be counted for him. We are wholly unable to discover the slightest trace of any mark or line in the republican circle except the one heavy line above described. There is no evidence of any attempt on the part of the voter to comply with the law by making a cross in the circle. This ballot was properly rejected by the court.

Ballot "Exhibit 1-A," voted in Olio precinct No. 1, was rejected by the court and appellant complains of this ruling. That ballot is marked with a distinct cross in the republican circle. There are also crosses in the squares on the republican ballot opposite the names of the candidates for county judge, county clerk and county superintendent of schools, and a cross in the square opposite the name of one of the democratic candidates for representative in the General Assembly. In the squares to the left of the names of appellant and appellee, and also in the squares opposite the republican and democratic candidates for sheriff, are the figures "½," made with a blue indelible pencil similar in appearance to the other markings on the ballot. It can not be said that the voter attempted to make a cross in these four squares, since the figures "½" are very carefully and accurately written. In each instance the slanting line that separates the figures of the fraction is drawn entirely through the square. The only conclusion that we can arrive at from an inspection of this ballot is that the voter desired to divide his vote equally between the two sets of opposing candidates, and he attempted to carry out this intention by writing the fraction "½" in the squares opposite the names of the respective candidates. This, of course, he had no legal right to do. We think that these figures sufficiently indicate that the voter did not intend to give appellant his entire vote, and since he had no right to divide it and give him a part of it, it could not properly be counted as a vote for appellant.

"Exhibit P," being a ballot cast in El Paso precinct No. 3, was not counted for appellant and this ruling is complained of. That ballot has no marks of any kind or character in any of the circles or squares upon it. It has a cross after the name of appellant and crosses after the names of two other candidates on the republican ticket. Appellant contends that this indicates an intention on the part of the voter to vote for him. The law requires the voter to indicate his choice by making a cross either in the circle at the head of his party ticket or in the squares opposite the names of the persons for whom he desires to vote. It is not sufficient to make a cross after the name of the candidate and entirely outside the square. It is not true that because we may be able to guess at what the voter intended, the law requires that his ballot should be counted. While the intention of the voter should be given effect when it is possible to do so without nullifying the statute, still there must be an honest effort on the part of the voter to observe the law and to express his intention in accordance with its requirements. The statute was entirely disregarded by the person who cast this ballot, and it was not error to refuse to count it for anyone.

The foregoing are the only ballots rejected by the court of which appellant makes complaint. He complains of a number of ballots that were counted for appellee. These will be considered.

"Exhibit 1," being a ballot cast in Clayton precinct, was counted for appellee over appellant's objection. The objection to this ballot is that it has the letter "B" in pencil on the back of the ballot. It is claimed that this ballot should be rejected because the letter "B" is a distinguishing mark. We do not agree with this contention, for the reason that we are convinced, from a comparison of the letter "B" with the initial of one of the judges, that the letter "B" was written, not by the voter but by the judge of the election, whose initials are "B. N." It is not un-

reasonable to suppose that the judge, before handing out the ballot, started to place his initials on it and wrote the "B," and then discovering that he was not placing the letters at the proper place, wrote "B. N." under the official endorsement and opposite the words "Judges' initials." The probability that this accounts for the presence of this letter on the back of the ballot is greatly strengthened by the striking similarity of the letter "B" on the back of the ballot with the same letter on this and other ballots evidently endorsed by the same judge. A distinguishing mark is a mark placed upon the ballot by the voter by which his ballot can be identified. A mark placed upon a ballot by the election officers, either before or after the ballot is voted, is not a distinguishing mark within the rule which requires ballots having such marks upon them to be excluded from the count. The ballots to which objections were sustained in *Winn* v. *Blackman,* 229 Ill. 198, are distinguishable from this ballot, in that ballots 164 and 117 in the *Winn case* had letters upon them which appeared to have been placed there by the voter and not by the election officials.

"Exhibit 31" is a ballot cast in Minonk precinct No. 2, and was counted for appellee over appellant's objection. This ballot is a straight democratic ballot voted with a cross in the circle, except that the voter voted by a cross in the square for the republican candidate for county clerk and erased the name of the democratic candidate for county clerk by drawing pencil lines through it. There are in black pencil the figures "25" to the left of the square opposite the name of the democratic candidate for county clerk. These figures and the erasure of the name of the democratic candidate for county clerk are thought to constitute distinguishing marks which ought to cause the rejection of the ballot. We cannot assent to this. In *Parker* v. *Orr,* 158 Ill. 609, it was held that a ballot which was properly marked with a cross and a circle, and on which

the voter had erased the names of some of the candidates, was a good ballot and should be counted for those persons whose names were not erased on the ballot voted. The method employed by the voter was manifestly for the purpose of emphasizing his intention to vote for the opponent of the candidate whose name is erased. This being the reasonable conclusion as to the voter's purpose in erasing the name, it ought not to be held that it was done for the unlawful purpose of distinguishing his ballot. The presence of the figures "25" on the margin of the ballot, when considered in connection with other ballots upon which figures appear, leads us to the conclusion that these figures were placed there by some person other than the voter,—most probably some of the election officers during the counting of the ballots. There are quite a number of ballots on which figures appear, some of them on the face of the ballot and others on the back. They are not consecutive numbers, and appear to have been made in every instance, with one exception, with a black pencil, while the markings on the face of the ballots by the voter were done with a blue indelible pencil. We do not think these figures should be held to be distinguishing marks.

Ballots in Minonk precinct No. 3, "Exhibit No. 1," in Minonk precinct No. 2, "Exhibits Nos. 35, 30 and 34," and in Metamora precinct, "Exhibits Nos. 23 and 24," were all objected to because they had figures upon them, either upon the back or face thereof, and are all disposed of by what has been said in reference to Minonk precinct No. 2, "Exhibit 31."

"Exhibit A," Kansas precinct, is a ballot objected to because there is no cross or other mark in the circle or in any of the squares. This is a straight democratic ballot and has a distinct cross in the democratic circle, but it appears to have been made with a broken pencil or with some hard substance that did not leave any color on paper. The cross, however, is very clearly to be seen, and while it is

merely made by indentation of the paper, the ballot was properly counted for appellee.

"Exhibit A," in Linn township, is a ballot which is printed double by having been fed through the printing press twice. The two impressions are not precisely in the same place, and it gives the ballot a peculiar, blurred appearance. It is a ballot that the judges of the election might reasonably have refused to give out as being a spoiled ballot, but it was given to a voter properly endorsed and is voted with a cross in the democratic circle, being a straight democratic vote, except the voter voted for the republican candidate for county judge by marking a cross in the square opposite that candidate's name. The voter has observed the law and clearly expressed his intention. It is very apparent how the ballot happened to be in the condition it is and that the voter was in no way responsible for it. We think this ballot was properly counted for appellee.

"Exhibit P," Montgomery township, is a ballot that has a portion of the circles above the socialist and socialist-labor tickets not printed in full, caused by the paper not being properly placed in the printing press. There is about one-half of the circle of the socialist-labor ticket, which was the last ticket on the ballot, and about two-thirds of the circle on the socialist ticket, that still remain on the ballot. The prohibition, republican and democratic ballots are perfect. This ballot is objected to by appellant. The portion of the ballot cut away does not in any way affect the republican or democratic ballots, both of which are perfect. The ballot is a democratic ballot voted for all of the candidates on the democratic ticket except the candidate for sheriff, which is left blank, and a cross is placed in the square opposite the name of the republican candidate for sheriff. This ballot was properly counted for appellee.

Ballot "Exhibit A," in Palestine precinct, is objected to because the initials "W. M. C." are on the back of the ballot, and the proof is that no judge of the election in

that precinct had such initials. One of the judges in that precinct who endorsed his initials on many of the ballots used the letters "W. M." He testifies that he does not know how the "C." happened to be on the ballot. The three letters are made with a blue indelible pencil and appear to have been made by the same person. There is no reason to suspect that the voter placed the "C." after the judge's initials "W. M.," and hence no reason for holding that the ballot has a distinguishing mark on it.

"Exhibit A," Olio precinct No. 2, is a ballot objected to because there is an insufficient cross in the democratic circle. There are a number of pencil marks in the democratic circle, but we think that there is a sufficient cross to warrant the court in counting the ballot. The marking of the ballot indicates that the voter was nervous and unable to make a straight line, but there is a point in the circle where two pencil marks intersect and cross. The ballot was properly counted for appellee.

"Exhibit G," in Olio precinct, is a ballot objected to for the reason that there is no cross in the square opposite appellee's name. The cross here is in the form of a capital letter "T," which has been held to be sufficient by this court in *Parker* v. *Orr, supra,* and *Winn* v. *Blackman, supra.*

Ballot designated "Exhibit A," in Montgomery township, is objected to because of insufficient marking in the democratic circle. The cross in the democratic circle is distinct and complies with the requirements of the law.

"Exhibit P," Cazenovia precinct No. 1, is a ballot objected to for insufficient marking. This is a democratic ballot voted by marking in the squares opposite the names of the several candidates, except that the voter voted for John A. Sterling for Congress. The cross in the square in front of appellee's name is sufficient. There is a distinct crossing of the lines near the center of the square, although one line is much shorter than the other. The ballot was properly counted for appellee.

"Exhibit 2-A," Olio precinct No. 1, is a ballot objected to because the voter wrote the figure "3" in the square opposite the name of Ella S. Stewart, who was a candidate for trustee of the University of Illinois on the prohibition ticket. There were three trustees to be elected, and evidently the voter supposed he could cumulate his votes on one candidate and took this method of attempting to do so. This affords no reason for rejecting the ballot. The ballot in other respects is free from objection and was voted for appellee and properly counted for him.

"Exhibit 3-A," Olio precinct No. 1, is a ballot similar to the one that has just been considered. The figure "3" is in the square before the name of one of the candidates for the legislature. It is clear that the voter was simply intending to cast three votes for that particular candidate for representative.

There are five other ballots that are objected to because the voter tried to indicate how he desired to distribute his votes among the candidates for the legislature. The objection made to all of these ballots is, that these figures, either placed in the square or in some instances after the name of the candidate, are distinguishing marks. The observations already made sufficiently show that these figures were made by the voter to indicate how he desired to distribute his votes among the candidates for the legislature.

"Exhibit B," being a ballot in Montgomery township, is objected to because of an attempt to erase a cross in the square opposite appellant's name. It is contended that this constitutes a distinguishing mark. All the candidates on the republican ticket appear to have been voted for by marking crosses in the squares opposite their respective names. The voter then undertook to erase the cross in the square opposite appellant's name, and in so doing has distributed the blue color in a blur over the square. There is a distinct cross in the square opposite appellee's name. The reasons for the appearance of this ballot are perfectly

apparent. It is simply a case of the voter changing his mind after marking his ballot for appellant and then voting for appellee. The ballot was properly counted for appellee.

Ballot "Exhibit B," in Palestine precinct, is objected to. It is a straight democratic ballot marked with a cross in the democratic circle, with the exception that the voter voted for a republican for member of the legislature and a republican for sheriff, and also marked his ballot for the prohibition candidate for county treasurer, and then erased, or attempted to erase, the cross in the square before the name of the prohibition candidate for treasurer and left his. ballot a straight democratic ballot, with the exception of the member of the legislature and sheriff. This ballot is substantially like the preceding one in Montgomery township.

Ballot "Exhibit 2," from Clayton precinct, is objected to because it only has one letter of the judge's initials on it. This has been held to be sufficient.

Ballots "A" from Cazenovia precinct No. 1, "E" from Olio precinct No. 2, and "D" from Olio precinct No. 2, were all republican ballots marked for appellant, and were rejected by the court because there was no endorsement of the initials of any judge on any of them. This question came before this court first in the case of *Kelly* v. *Adams,* 183 Ill. 193, and it was there held that a ballot not officially endorsed by a judge of the election could not be counted. It was said in that case, on page 195: "The absence of the official endorsement would have been sufficient cause for the rejection of this ballot." The same question again arose in *Caldwell* v. *McElvain,* 184 Ill. 552, where the ruling of the court below in refusing to count for either party ballots which did not have the initials of a judge endorsed thereon was affirmed. And again in the case of *Choisser* v. *York,* 211 Ill. 56, the question arose as to the effect of using a rubber stamp instead of endorsing the initials of the judge on the ballot in his handwriting, and the doctrine

of the previous cases was re-affirmed and the statute requiring the endorsement of the initials of one of the election judges was held to be mandatory, and that a ballot not so endorsed should not be counted. The same question was again before this court in *Winn* v. *Blackman, supra,* and it was held there that ballots which did not contain the initials of any of the judges on the back of them were properly rejected. These cases must be regarded as establishing the rule in this State that a ballot which does not contain the initials of any of the judges of the election is not an official ballot and cannot be counted for anyone.

Finding no error in this record the judgment of the county court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE CARTER, dissenting:

I do not concur in the foregoing opinion on one point. In my judgment the three ballots that did not contain the endorsement of the initials of the judges should be counted. The court, in *Choisser* v. *York,* 211 Ill. 56, after reviewing the authorities in this State on the question, said that ballots not having the initials of the judges of election endorsed thereon could not be counted, "in the absence of evidence tending to show fraud and mistake on the part of the judges." I am of the opinion from this record that these three ballots were cast by legal voters and the judges inadvertently omitted their initials on the back. A voter should not be deprived of his vote by a mistake of election officers where he is not at fault, and the ballot itself, or other evidence in the record, shows that the ballot is genuine, delivered by the judges to the voter and by him voted, and that the lack of the judges' initials was caused by mistake. The initials of a judge in his handwriting are for the purpose of identifying the ballot, but if the ballot can be fully identified, even in the absence of the initials, and it is shown that it was cast by a legal voter, it should be

counted. This conclusion, I think, is in harmony with the decisions heretofore rendered by this court.

Mr. JUSTICE DUNN, also dissenting.

COOKE and FARMER, JJ., specially concurring:

We concur in the result reached and in all that is said in the opinion except the holding and discussion in reference to the ballot "Exhibit 1-A," in Olio precinct No. 1. The statute does not permit any splitting or division of a vote between the candidates for sheriff and the candidates for treasurer. The voter is presumed to know the law, and to know, therefore, that he could not legitimately mark his ballot in the way in which this ballot was marked. In our opinion the figures "½" in the four squares indicated constitute distinguishing marks, and 'this ballot should be thrown out and not counted for any candidate.