(No. 11745.—Judgment affirmed.)
SHELDEN ATWATER, Appellant, *vs.* EARL CLEVELAND ECKARD, Appellee.

*Opinion filed December 19, 1917—Rehearing denied Feb. 7, 1918.*

1. ELECTIONS—*erasure on ballot is not distinguishing mark.* An erasure on the back of a ballot, where a voter had apparently written a.name and attempted to erase it with a rubber eraser, leaving the name almost completely erased and practically indistinguishable, is not a distinguishing mark that will justify disregarding the ballot.

2. SAME—*when ballots should be treated as having a sufficient cross.* Where a ballot is marked with a diagonal line in the square opposite the name of one of the candidates, which is intersected by another line apparently made by two strokes of·the pencil, leaving a fork at the top, the ballot should be treated as having·a sufficient cross; so, also, where one line in the party circle slightly crosses another line and continues in the same general direction as the other, forming a character similar to the letter "Y."

3. SAME—*what is not a distinguishing mark.* A blur across the first name of one of the candidates for the contested office, apparently made in an attempt to erase a pencil mark across the name, should not be considered a distinguishing mark.

CARTER, C. J., and CARTWRIGHT, J., dissenting.

APPEAL from the County Court of Mason county; the Hon. JESSE M. OTT, Judge, presiding.

CLARENCE W. HEYL, and HARRY C. HEYL, for appellant.

HARDIN W. MASTERS, and E. P. NISCHWITZ, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant, Shelden Atwater, was the republican candidate for the office of supervisor of the town of Quiver, in Mason county, at the township election held on April 3, 1917, and appellee, Earl Cleveland Eckard, was the democratic candidate for that office. At the close of the election the judges of election counted the ballots and declared appellee elected by one majority. Appellant filed a petition to contest the election in the county court of Mason county, and on the hearing the court ordered the ballots produced and re-counted. The court found the appellee had received 126 legal votes and appellant 125 and dismissed the petition. This appeal followed.

It is conceded that of the ballots produced and counted on the hearing of the contest in the county court 125 should be counted for appellant and 123 for appellee. Six ballots, marked, respectively, Exhibits 1, 2, 3, 4, 5 and 6, were objected to, and of these ballots it is further conceded that those marked Exhibits 1, 4 and 6 were properly not counted for either party. Ballots marked Exhibits 2, 3 and 5 were counted for appellee, thereby giving him a total of 126 votes, and one majority over appellant.

It is assigned for error that the court erred in holding that the ballots marked Exhibits 2, 3 and 5 were legal ballots and should be counted for appellee. It is further assigned for error that the court erred in not holding and finding that the election was illegal because of the improper and unlawful interference of appellee with the re-count of the ballots by the judges and clerks of election and in changing the returns of said election after the same had been an-

nounced and signed by the election officers; and in not finding that there was one ballot counted for appellee on which there were no initials of one of the judges of said election at the time said ballot was voted, and that appellee illegally caused the initials of one of the judges to be placed thereon after the ballot-box had been opened and the polls closed.

It appears from the evidence that at the close of the election the judges counted the ballots in the presence of appellant and a number of his friends. The three ballots above referred to were objected to as defective and at first were not counted. The ballots were strung on a wire, as provided by law, and the number of votes for the respective candidates was written down by the clerks on the tally-sheets. Aside from the three ballots objected to and not counted by the judges of the election appellant had a majority of three votes, and it was so stated among the bystanders, but no result was announced by the judges of election. Appellant and his friends left the voting place, and shortly afterwards appellee came in and asked what was the result, and was informed that apparently he had been defeated by three votes. He inquired about the ballots which had not been counted and asked the judges of election to re-count the ballots. They were uncertain of their right to do this and appellee went out and telephoned the county clerk, and when he came back he informed the judges that that officer had stated that they could count over the ballots if they had not as yet announced the result, and they then proceeded to take the ballots off the wire and re-count them. Appellee also informed the judges of election that they should come to some decision as to the ballots objected to and which they had not counted. One of the clerks of the election testified that during the re-count, at the suggestion of appellee, one of the judges of the election (Brown) put his initials on the back of a ballot which had no initials on it. Brown denied this, as also did another one of the election judges. The other judge did not testify on this point. It

is not shown who was voted for on this ballot. Appellee was the supervisor of the town, being the candidate to succeed himself. He came to the polls at the close of the election for the purpose of paying the judges and clerks and receiving the ballots, and did pay the election officers and received the ballots sealed up in canvas bags and delivered them to the town clerk. It is not shown, except by the evidence of the clerk, Roundtree, that he interfered in any way with the count, and two of the election judges testified that he did not interfere with the count in any way. The judges of the election considered the three ballots above referred to as Exhibits 2, 3 and 5 on the re-count and counted them for appellee. We do not think that any fraud by the election officers or interference on the part of appellee is shown by the evidence that would justify a consideration of anything but the three ballots above referred to. The result of the election depended upon how those three ballots should be counted. It is not necessary to consider the method by which the judges of the election decided these ballots or their reasons for deciding the way they did, as the three ballots were subsequently passed upon by the county court in the election contest and the same must be passed upon by this court. The originals have been certified, with the record, to this court, and there are photographic copies in the abstract.

It is urged by counsel for appellant that the ballot designated as Exhibit 2 is defective and should not be counted for the reason that a name was written on the back of the ballot, which serves as a distinguishing mark. It was a woman's ballot, and there is a distinct and proper cross in the circle preceding the party appellation "Democratic," at the head of the ticket. It is claimed by counsel for appellant that on the back of this ballot the voter's name, "Ora Horchem," was written and partially erased. One of the judges of election (Brown) testified that he was acquainted with a voter of that township by the name of Ora Horchem and

that she voted at that election. Philip Horchem testified that he lived in that township and was a voter there and had a daughter-in-law by the name of Cora Horchem. He was the candidate on the democratic ticket for commissioner of highways. An inspection of the original ballot shows that something had been written on the back of the ballot, apparently with an indelible pencil, the same as was used in making the cross in the circle. The name, however, or whatever was written on the back of the ballot, has been almost completely erased, apparently by rubbing with a rubber eraser, and is practically indistinguishable. In *Hodgson* v. *Knoblauch,* 268 Ill. 315, holes had been made in two of the ballots which were considered, apparently by erasing marks that had previously been made, and we held that they were not distinguishing marks. For all that appears from the ballot in question, either from its appearance or from the evidence in the record, the person voting wrote a name or something on the back of the ballot, inadvertently or through ignorance or mistake, and sought to erase what was written. In *Winn* v. *Blackman,* 229 Ill. 198, it is said there is no express provision in our statute that a ballot containing a distinguishing mark is to be rejected, and the ground upon which such a ballot is rejected is that it violates both the letter and the spirit of the law intended to guard the secrecy of the ballot. In the opinion in that case it is further said, on page 212, quoting from *Rexroth* v. *Schein,* 206 Ill. 80: "Therefore, not every mark made by a voter on his ballot which may separate and distinguish the particular ballot from other ballots cast at the election will necessarily result in the declaration that the ballot is invalid. If it appears from the face of the ballot that such marks or writings were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of candidates among those to be voted for at the election, and that the voter did not thereby intend or attempt to indicate who voted the ballot, the ballot should not be rejected

as to candidates for whom there is thereon a choice expressed in compliance with the requirements of the statute." We think this ballot was properly counted.

The same objection is made to ballot marked Exhibit 3. This ballot was voted by marking a cross in the square opposite the name of appellee. The cross is somewhat irregular in shape, being formed by a line drawn from the upper right-hand corner of the square extending towards the lower left-hand corner and intersected by a line drawn from the top of the square towards the bottom, the latter line having a slight fork at the top of the square. Apparently the voter made the last mentioned line by making two strokes with the pencil. There are, however, two distinct intersecting lines which make a cross in the square, and we think it sufficiently appears from the mark that it was the intention of the voter to vote for appellee.

It is also objected to this ballot that the word "Sheldon," being the first name of appellant, in the republican column, opposite and to the left of the name of appellee, has been crossed out, and that this constitutes a distinguishing mark. There is a blur across the name "Sheldon" on the ballot. It may have been caused, as contended by counsel for appellant, by drawing a line through the name "Sheldon" with an indelible pencil and trying to erase it. The mark was apparently caused by inadvertence. But even if there was an attempt to erase the name of the appellant by drawing a horizontal line through the name, it was held in *Kerr* v. *Flewelling,* 235 Ill. 326, that while such marks should not be made on the ballot by the voter, these pencil erasures could not be held to be distinguishing marks, and the ballot was properly counted,—citing *Winn* v. *Blackman, supra,* and *Parker* v. *Orr,* 158 Ill. 609.

As to Exhibit 5, the only mark on that ballot was in the circle to the left of the party appellation "Democratic," at the head of the ticket. This mark, at a casual glance, appears like the letter "Y." It is formed by a tolerably straight

line running diagonally from the upper right-hand part of the circle to the lower left-hand part. This is intersected by another line running from the upper left-hand part of the circle to about the center, where it intersects the first line. On a close inspection it appears that from the point of intersection the last mentioned line slightly crosses the first line and extends in the same general direction of the first line. This may have been caused by a defective pencil or laying the ballot on a rough surface while making the mark. In *Slenker* v. *Engel,* 250 Ill. 499, we held that a cross in the circle is sufficient if there is a point within the circle where the lines intersect, even though there are a number of marks in the circle indicating that the voter was nervous and unable to make a straight line, and that a mark in the form of the capital letter "T" in the square opposite the candidate's name is sufficient; that so, also, is a cross in the square which has one line much shorter than the other,— citing *Parker* v. *Orr, supra,* and *Winn* v. *Blackman, supra.* In *Brents* v. *Smith,* 250 Ill. 521, it was held that if the lines within a circle meet but do not cross or intersect they can not be held to be a cross under the authorities, but if they intersect and cross, even slightly, within the proper circle or square they should be considered as a cross. In *Bell* v. *Clawson,* 261 Ill. 148, it was held that to entitle a ballot to be counted there must be a point inside the square or circle where there is an intersection of the lines which may properly be called a cross. In *Hodgson* v. *Knoblauch, supra,* it is said on page 321 of the opinion: "A ballot cast in * * * precinct * * * has no mark in any of the party circles but has marks in the squares of different columns. In several instances the voter brought the lines together practically at right angles, so that the lines intersected, but one line did not cross the other, and one of these appears in the square in front of the appellee's name. The lines intersect within the square practically in the form of a capital letter 'T,' which was held sufficient in *Slenker* v. *Engel, supra,* and

there was no error in counting that ballot." We think that it sufficiently appears from an inspection of this ballot that the voter made an honest attempt to vote for appellee and that the county court properly counted this ballot.

The county court properly counted the objected ballots for appellee, and the judgment of that court finding that appellee received 126 votes and appellant 125 and dismissing the petition was right and will be affirmed.

*Judgment affirmed.*

CARTER, C. J., and CARTWRIGHT, J., dissenting:

We do not agree with the conclusion reached in the foregoing opinion. We think, without question, under the statute and authorities, the name written on the back of the ballot Exhibit 2 is a distinguishing mark though the name is partially erased. The letter "o" in the first name is very clearly distinguishable, as is the "h" in the second name. This court has held that where the name of a person is written on the back of a ballot such ballot should not be counted because the name was a distinguishing mark. (*Caldwell* v. *McElvain,* 184 Ill. 552; *Tandy* v. *Lavery,* 194 id. 372.) There was enough of the name unerased to show certain letters plainly, and one witness testified that he could make out the entire last name, "Horchem," even after the attempted erasure. A distinguishing mark is such a mark as will separate and identify the particular ballot from the others cast. It is the duty of a voter to follow the provisions of the Ballot law in marking his ballot. He has no right, through negligence or willfulness, to disregard that duty and make any mark upon the ballot which will tend to destroy its secrecy. (*Kelly* v. *Adams,* 183 Ill. 193; *Pierce* v. *People,* 197 id. 432.) There was no attempt made on the hearing in the trial below to show how this name came to be written on the back of the ballot or who attempted to erase it. There is nothing to indicate whether it was attempted to be erased by the voter or by some of the judges

282 — 9

or other election officials. If the voter by mistake wrote the name upon the back of the ballot, the ballot should have been considered, under section 26 of the Ballot law, as spoiled or mutilated, and ought to have been returned by the voter to the judges as a spoiled ballot and another ballot taken that was without any distinguishing mark upon it. (*Teebe* v. *Smith,* 108 Cal. 101.) Of course, if any of the election officials erased the name after it was written there by the voter that would not render the ballot legal even though the name were entirely erased.

The action of appellee in demanding that the ballots be re-counted and his apparent control of the judges in making this re-count cannot be too strongly condemned. It is true that it is stated that appellee said he called up the county clerk and the county clerk stated the judges could re-count the ballots. Such instructions from the county clerk should have been given direct to one of the judges, and they were very derelict in permitting appellee to make the inquiries of the county clerk and report to them. Some one of the judges should have inquired directly of the county clerk. It is apparent from reading the testimony in the record that appellee dominated the re-count and directed how it should be done, and it is apparent, also, that his advice was followed as to counting some of the disputed ballots. Such actions on the part of the appellee were very reprehensible. If it were not practically conceded in these briefs that the election turned on the three disputed ballots, the originals of which are made exhibits in this case, and the question as to preservation and proper return of all the ballots were properly raised here, there would be strong ground for arguing that appellee's actions invalidated the election; but as we think, regardless of the other points in the case, ballot Exhibit 2 was improperly counted for appellee, the judgment should be reversed for further proceedings in harmony with this opinion and the statute in such case made and provided.