(No. 21392.—
CHARLES H. GREENE, Appellant, *vs.* CONRAD M. BJORSETH, Appellee.

*Opinion filed October 22, 1932—Rehearing denied Dec. 22, 1932*

MAURICE F. LORD, and ALSCHULER, PUTNAM, FLANNI-
GAN & JOHNSON, for appellant.

FRANK R. REID, CHARLES A. O'CONNOR, and JOHN G.
PLAIN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Charles H. Greene and Conrad M. Bjorseth were candidates on April 21, 1931, for the office of mayor of the city of Aurora, which had adopted the commission form of government. The city council canvassed the vote on April 22, found that Bjorseth received 9556 votes and Greene 9543, and declared Bjorseth elected. He qualified and assumed the duties of the office. On May 21 Greene filed a petition in the county court of Kane county to contest the election. A demurrer was sustained to the petition and it was amended. A motion to dismiss the amended petition was overruled, as was a demurrer subsequently filed. Bjorseth answered, the cause was heard, the court found that Bjorseth had received 9359 votes and Greene 9355, and declared the former elected. Greene appealed, and the appellee has assigned cross-errors.

A preliminary question arises on the cross-errors. The appellee contends that the court erred in allowing the petitioner to amend the petition more than thirty days after the result of the election had been declared, by inserting the allegation that he was a resident of the third ward of the city of Aurora. The allegation of the original petition was that he was "a resident and legally qualified elector and voter of the city of Aurora." This is all the statute requires. The appellee contends that the allegation is a mere legal conclusion of the pleader. The allegation that the petitioner is an elector is an allegation of the fact, which is itself dependent upon citizenship, residence and freedom from conviction of a felony, but the fact in regard to all these things need not be alleged to make it appear in a pleading that he is an elector. The question of citizenship is also dependent on place of birth of a person or his ancestor or the naturalization of the one or the other, but it is not necessary to allege these facts in alleging citizenship. Residence is also a somewhat complicated question, but it is sufficient for a complainant in a bill for

divorce to allege that he is a resident of the county in which his bill is filed. The appellee cites *Donovan* v. *Comerford,* 332 Ill. 230, in support of his contention, but that case did not hold that the allegation that the petitioner was an elector was a legal conclusion or that it was necessary for a petitioner in an election contest to allege that he had resided in a certain election district thirty days or any other length of time. The petition in that case did not state that the petitioner was an elector but only that he was a citizen and resident of Cook county, and the court held that citizenship and residence did not, alone, make one an elector. In holding that particular petition insufficient the opinion said that it was fatally defective because it contained no allegation that the petitioner had been a resident of any election district for thirty days next preceding the election. If it had contained that allegation it would have shown the petitioner to be an elector, but failing to do so, the petition, not showing otherwise that he was an elector, was fatally defective. The other case cited on this point by the appellee, *Kitt* v. *Holbert,* 248 Pac. 25, is of the same kind.

Another objection made to the petition is that it was wholly on information and belief. No objection is made to its verification, which is the usual form of verification of bills in chancery. The allegations of the petition, of which the petitioner could be expected to have personal knowledge by his own observation, were stated positively in the bill as facts, without qualification. The bill also contained allegations of many facts of which, by their nature or the circumstances, the petitioner could not have personal knowledge—facts occurring in his absence, which he could not know except by information derived from others. These allegations are made not less positively but are qualified by the statement that they are made on information and belief in substantially the form, "on information and belief the petitioner states," proceeding with

allegations of the facts charged. The charges are no less direct and positive than those which are not preceded by the qualifying statement that they are made on information and belief. The statements so made are really averments of the facts, together with a statement of the source from which they are derived. *Coryell* v. *Klehm,* 157 Ill. 462.

The motion to dismiss the amended petition, and the demurrer to it, were properly overruled.

On the day this petition was filed in the county court Frank Thelen filed in the circuit court a petition to contest the election of Frank Biever to the office of city commissioner in the same election. The ballots and papers used in the election were ordered by the court to be impounded and were put in possession of the circuit clerk. The circuit court made an order in that cause that the county court and the parties interested in this case in the county court be given the opportunity to observe, inspect and examine the ballots, poll-lists, tally-sheets, list of absent voters, and all other papers and documents pertaining to the election. The trial of the case in the circuit court was held in the supervisors' room in the court house, and the county court met in that room while the circuit court was in session there and had before it the ballots and papers used in the election. The appellee objected to any session of the county court in the room occupied by the circuit court, and his objection was overruled. The appellee then objected to the county court listening to the testimony of the circuit clerk given in the trial of the case in the circuit court in regard to ballots, tally-sheets and other things material to the issue pending in the county court. The court sustained the objection, saying, "The court will automatically disregard everything that was heard." The appellee urges that the county court erred in holding court in the room where the circuit court was in session and anywhere but in the county court room, on the ground that confusion necessarily arose out of the circumstances and that there was

no warrant of law for the action of the court. Later, after the trial had proceeded for a time, counsel for the appellee entered an objection that he could not follow the testimony because of the conduct of the contest in the case which was in progress in the circuit court and the confusion arising from the counting of the ballots in that case. The court, recognizing the justice of the objection, ordered an adjournment instanter to an anteroom of the supervisors' room for the further hearing of the case and the trial was continued in the anteroom. No prejudice is pointed out from the action of the court either in proceeding with the trial of the case in the same room with the circuit court or in removing from that room to an anteroom and continuing the trial there. There is no rule of law requiring either the circuit court or the county court to hold its sessions in any particular room in the county court house and they may be held in any suitable room provided for that purpose in the court house. The situation was an unusual one, to be met in a practical way. In ordinary cases it would be confusing for two courts to be in session in the same room at the same time, but these two courts, dealing with the same subject matter and necessarily using the same ballots, poll-lists, tally-sheets and other papers and documents, might very well without confusion perform their similar duties at the same time and place or in succession. The circuit clerk had the custody of the ballots and papers, which were in five mail sacks, sealed, and in the vault of the circuit clerk. The method of proceeding was that the circuit clerk brought a mail sack into the presence of the circuit court, opened it upon the order of the court, and after the court and the lawyers, and others who were interested in the case on trial, had used the contents as evidence, they were brought to the county court, sitting first in the room in which the circuit court was also sitting and after a time in an adjoining room, and there the circuit clerk testified in the case there pend-

ing, identifying the papers and sacks which he brought into the room as the same which he had exhibited in the circuit court on the trial in the circuit court. On the trial in the circuit court the ballots had been handled by from six to a dozen people. We cannot say that prejudice would necessarily or probably result, and no prejudice is shown. The course pursued in regard to the trial is not shown to have had any prejudicial effect and is not a ground for the reversal of the judgment reached.

The appellee contends that the court erred in allowing the ballots to overcome the returns, because the appellant did not show that the ballots had been properly preserved. The appellee presents ten objections to the reception of the ballots and to their probative force. The first is, that the ballots and returns were deposited on the floor of the vault in the clerk's office. It is shown by the evidence that they were so deposited in their original packages and on the evening of the election, after their delivery to the city clerk. This did not show that they were not properly preserved. The evidence further shows that the vault was locked when the city clerk left and policemen were on guard at its door during the whole night, until the clerk arrived the next morning. The vote was canvassed the next day, and on the next day the city clerk put the ballots and returns in United States mail bags, sealed them and stored them in the basement vault, having caused the combination of the lock on the basement door to be changed, so that no one knew the new combination except the man who changed it, the clerk and his deputy. The mail bags remained in the basement vault undisturbed until May 22, when they were surrendered to the circuit clerk, who, before receipting for the contents of the bags, required the city clerk to open them in his presence and the individual items in the mail bags were noted and receipted for by the circuit clerk. The bags were then removed to the vault in the circuit clerk's office, re-sealed, and stored on top of a filing cabinet

seven and a half feet high. Five mail sacks were there piled, two east and west, two north and south and the fifth diagonally, leaning against the others. The circuit clerk noted their position and looked at them whenever he was in the vault. They were not moved or their position changed or their seals disturbed until they were taken to the circuit court. While the vault was open to anyone who wished to consult the records, they were always under supervision.

The second objection is, that the ballots and returns were delivered to the city clerk by persons who were not judges or clerks and unauthorized to handle the ballots or returns. The testimony referred to in support of this point is that of Lawrence Leon. He had been appointed chairman of the election board but did not act. He was a checker for the appellant in the twenty-third precinct, and when the count was completed the ballots, poll-books, tally-sheets and supplies were prepared by the election officers as required by law and the bundle was given to Leon, who carried it to the city hall, occupying about ten minutes in going there and delivering it to Wetz, the city clerk, in person. The only testimony in the case shows that the ballots were not tampered with during the time they were in the unauthorized possession of persons who were not judges or clerks of election.

The third objection is, that when the circuit court had finished with the ballots the unused ballots for the twenty-fourth precinct were tied with the used ballots and returns for the seventeenth precinct and the unused ballots for the seventeenth precinct were tied with the ballots and returns for the twenty-fourth precinct and in that condition were delivered to the custodian of the circuit court and by him to the county court. This confusion arose because of opening the ballots and returns while a single witness, a judge of the twenty-fourth precinct, was on the witness stand and by mistake the ballots of the seventeenth precinct were

opened and presented to him. On discovery of the mistake the ballots of the twenty-fourth precinct were opened and identified. The confusion in the two packages of unused ballots doubtless arose in this way and it was of no importance.

The fourth objection was, that a door leads to the small vault-room in the clerk's office from the mayor's office and the clerk did not know whether that door was locked. The evidence shows that the vault in which the ballots and returns were kept opens into the city clerk's private office. A door between the clerk's private room and the mayor's reception room has been closed and about two years before the election it was locked and as far as the clerk knew it had not been opened. Against it, on the clerk's side, was a roll-top desk, and on the mayor's side there had been something hanging across the door. The only entrance into the vault is through the clerk's private office, and the existence of the door between the mayor's reception room and the clerk's private room has no tendency to cast suspicion on the integrity of the ballots kept in the vault.

Objection is also made to the custody of the ballots by the circuit court's custodian under an order of that court. This is no valid objection. Both the circuit and county courts have jurisdiction in election contests. The use of the ballots in a contest in either court could not, of itself, invalidate them for use as evidence in the trial of another contest of the same election in another court in which they were material evidence unless there was evidence tending to impeach their integrity while they were in the custody of the court's custodian.

The sixth objection is to the care taken of the ballots while they were deposited in the vault of the circuit clerk's office; that the vault was open to the public and employees of the office; that two employees of the county abstract company occupied the vault in the daytime, and these employees were employed by counsel for the contestant as

watchers. They testified to their constant presence in the vault and that nobody tampered with or touched the papers, and there is no suspicion that anyone did.

The seventh point, that the ballots were counted and handled in the trial of the case in the circuit court, has been considered and held of no force.

The eighth objection is also concerned with the count of the ballots in the circuit court and the handling of them by from six to a dozen people. In the absence of evidence to the contrary the presumption must be indulged that all who handled the ballots in the circuit court were authorized to do so.

The ninth and tenth points are of the same character as the seventh and eighth, and they are not sustained by evidence. The ballots were properly received.

In the seventh precinct 100 ballots were voted bearing the initials "J. M. C.," being the initials of J. M. Cantillon, a judge in that precinct, which were placed there the night before election, not by the judge himself but by a granddaughter at his direction. Seventy-one of the ballots were voted for appellee and 29 for appellant. Cantillon was sixty-eight years old, and had to use both hands to write, holding his right hand with the left one, writing slowly. The trial court held that the ballots were invalid. The appellee contends that they were valid and that the 71 voted for him should be counted. The conclusion of the trial judge that these ballots could not be counted was correct. *Perkins* v. *Bertrand,* 192 Ill. 58; *Laird* v. *Williams,* 281 id. 233.

Among the ballots cast at the election 228 were cast by absent voters. Two hundred and ten of these absent voters' ballots were not initialed by any judge of election, 135 of which were marked for the appellant and 71 for the appellee. These ballots were not counted, but the appellant contends that they should have been, and that, this being done, the appellant will be entitled to the office and no further

consideration of disputed ballots will be necessary. He admits that in *McCreery* v. *Burnsmier*, 293 Ill. 43, *Humphrey* v. *Perry*, 310 id. 373, *Allen* v. *Fuller*, 332 id. 304, and *Sibley* v. *Staiger*, 347 id. 288, we decided adversely to his contention—that the requirement of the indorsement of the initials of a judge of election on every ballot is mandatory and applies to the ballots of absent voters—but he insists that those decisions are wrong, are founded on improper reasoning and should be overruled. We have considered the arguments of counsel and the decisions cited from other jurisdictions, but we are not convinced that we should overrule these decisions which have declared the rule in this State and we adhere to that rule. The 210 absent voters' ballots which were not counted by the court were properly rejected.

Many objections were made to individual ballots. Taking up first the appellant's objections to ballots claimed by the appellee:

Ballot No. 47, precinct 1, has an unexplained scroll on its back which served as a distinguishing mark, and the appellant's objection to it, which was overruled, should have been sustained.

Ballot 355, precinct 2, was objected to as having a distinguishing mark, consisting of the figures 87, 86 and 86 at the top, on the face of the ballot, through which lines have been drawn. It is apparent from the face of the ballot that these marks were not put there by the voter but probably by an election officer on the original count or by someone who handled it on the re-count in the circuit court. The objection was properly overruled and the ballot counted for the appellee.

Ballot 84, precinct 3, has on its left margin two marks in ink. The voter voted with pencil. The ink-marks were very faint and indistinct and could not have been intended to distinguish the ballot. The appellant's objection to it was properly overruled.

Ballot 116, precinct 3. On the back of this ballot, which had a square opposite the appellee's name, the figure "49" appears in a circle. This was obviously a memorandum made on a count of the ballots. The objection was properly overruled and the ballot counted for the appellee. Of the same character is the objection to ballot 117, precinct 3. On its back are figures with a circle around them and circular lines through them. The appellant's objection to it was properly overruled.

Ballot 395, precinct 7. The appellant's objection to it should have been sustained. There is a cross to the right of the name of the appellee on the ballot. This is an identifying mark, and the vote was improperly counted for the appellee.

Ballot 109, precinct 8, was properly counted for the appellee. It is blurred on its back in an effort to erase something written there which is not legible and apparently was blurred in an effort to erase marks which may have been ignorantly made by the voter. Such a ballot may be counted. *Atwater* v. *Eckard,* 282 Ill. 122.

Ballot 304, precinct 8, was properly counted for the appellee. That it had on its back horizontal lines drawn through and rendering illegible something written there did not destroy it. *Atwater* v. *Eckard, supra.*

Ballot 128, precinct 11, with a cross in the square opposite the appellee's name and a diagonal line in the square opposite the name of the appellant, was properly counted for the appellee because the diagonal line in the square opposite the appellant's name is apparently a continuance of one line of the cross in the square opposite the appellee's name.

Ballot 232, precinct 11, was improperly counted for the appellee. It differs from ballot 128 in that the diagonal line in the square opposite the appellant's name appears to have been made intentionally and independent of the marking in the square opposite the appellant's name. It is a distinguishing mark.

Ballot 129, precinct 12, was improperly counted for the appellee. There was a cross at the right of the appellee's name which, unexplained, is a distinguishing mark. (*Stevenson* v. *Baker,* 347 Ill. 304; *Brents* v. *Smith,* 250 id. 521.) The appellant's objection should also have been sustained to ballot 323, precinct 13, for the same reason. It had a cross after the appellee's name and after the name of each of the four candidates voted for by the elector, which were distinguishing marks. The same is also true of ballot 450, precinct 13. The distinguishing mark on this ballot was a diagonal line following the appellee's name in addition to the cross in the square in front of his name.

Ballot 174, precinct 14, was improperly counted for the appellee. It had a cross in front of the words "For Police Magistrate" on the ballot, which could serve no useful purpose but was a distinguishing mark. The appellant's objection to it should have been sustained.

Ballot 865, precinct 15, has names written on its back with pencil lines drawn through them. The marks are not explained and the ballot is distinguished by them. The appellant's objection to this ballot should have been sustained. *Brents* v. *Smith, supra.*

On ballot 353, precinct 15, diagonal lines have been made to the left of the five candidates for whom the elector voted. They are distinguishing marks and the ballot was improperly counted for the appellee.

Ballot 431, precinct 16, should not have been counted for the appellee. It has a check-mark near the square before the appellee's name and smaller check-marks indicating the names of the candidates for whom the elector voted.

Ballot 593, precinct 17, has a pencil mark in the form of the figure "1" to the right of the appellee's name. It is parallel to the line of each cross made by the elector in voting and gives evidence of intentional marking. The ballot was improperly counted for the appellee.

Ballot 350, precinct 18, has in the margin on its face the number "100," with nothing to indicate by whom it was

placed there. The number was probably put there in the progress of the count. The appellant's objection was properly overruled.

Ballot 555, precinct 19, has a check-mark to the right of the name of the candidate George Haywood. It is a distinguishing mark and the appellant's objection to it should have been sustained.

Ballot 188, precinct 19, has the name "Bjorset" at the right of the appellee's printed name. The appellant's objection should have been sustained to this ballot.

Ballot 391, precinct 20, has on its back the letters "R. B." as well as the initials of a judge of election. On account of this distinguishing mark the objection of the appellant to the ballot should have been sustained.

Ballot 400, precinct 20, has an oblique line to the right of the appellee's name and a cross to the right of each of five other candidates' names. It has a cross only in the square before the name of the appellee. The other crosses and the oblique line constitute distinguishing marks, and the appellant's objection should have been sustained to this ballot.

Ballot 72, precinct 21, has a cross in the square in front of the appellee's name and following his name. The second cross was a distinguishing mark, and the appellant's objection to it should have been sustained.

Ballot 487, precinct 24, was properly counted for the appellee. On its back the names of several of the candidates had been written and afterwards an effort was made to erase them, which was practically successful. The appellant's objection was properly overruled.

On the back of ballot 544, precinct 25, is a diagonal line. It appears to have been inadvertently made, and the ballot was properly counted for the appellee.

Ballot 589, precinct 26, has a cross in the square in front of the appellee's name and a cross following it. The appellant's objection to it should have been sustained in-

stead of overruled. Ballot 709, precinct 26, is subject to the same objection, the voter having marked a cross in the square to the left of the name of Bert Ochsenschlager, who was a candidate for police magistrate, and also to the right. Ballot 284, precinct 26, is also subject to the same objection, having a check-mark and scroll to the right of the appellee's name. The ballot should not have been counted. Ballot 243, precinct 27, is of the same character and should not have been counted for the appellee.

Ballot 69, precinct 1. The lines did not intersect in the square in front of the appellee's name so as to make a cross. The appellant's objection to the ballot should have been sustained.

Ballot 221, precinct 3. In the ballot the lines did cross in the square, and the appellant's objection was properly overruled.

In ballot 231, precinct 3, the lines do cross in the square, and the appellant's objection to the counting of the ballot should have been overruled.

Ballot 76, precinct 3, was also properly counted for the appellee. The square before the appellant's name has been almost totally blackened out with pencil lines and a cross is plainly marked in the appellee's square. Apparently the voter made a mistake in his first effort to mark the ballot and erased it by blackening out the pencil lines and putting a cross in the square before the appellee's name.

Ballot 450, precinct 7½, was properly counted for the appellee. The cross in the square in front of the appellee's name was sufficiently distinct.

In ballot 535, precinct 10, there is a distinct cross in the square in front of the appellee's name, and it was properly counted for him.

Ballot 672, precinct 11, has a cross in the square opposite the name of the appellee. Dim marks in the square before the name of the appellant indicate that a cross was marked in that square but was afterward erased. The ballot was properly counted for the appellee.

The appellant's objection to ballot 64, precinct 13, that the two lines within the square before the appellee's name meet to form a V but do not cross, should have been overruled. The lines not only meet but they also plainly cross. The ballot was properly counted for the appellee.

Ballot 677, precinct 14, was improperly counted for the appellee. The character in the square is a V and the lines do not cross. A V is not a cross. (*Brents* v. *Smith, supra.*) To ballot 403, precinct 15, the same objection is made, but in this case the lines do cross and the ballot was properly counted.

In ballot 53, precinct 15, there was no cross within the square, the intersection of the two lines being outside. It was therefore improperly counted for the appellee.

To ballot 369, precinct 20, the objection is made that the lines do not intersect within the square, but it is not sustained by an examination of the ballot, which was therefore properly counted for the appellee. To ballot 314, precinct 21, the same objection is made as to the last ballot, but the ballot shows an intersection within the square and was properly counted for the appellee. The same objection is made to ballot 1036, precinct 24, but an inspection of the ballot does not sustain it. It was properly counted for the appellee.

In ballot 978, precinct 24, the lines cross in the square, and the objection to it was properly overruled.

Ballot 25, precinct 24, has much the same character of cross as ballot 978, and the objection to it was properly overruled.

In ballot 686, precinct 24, the objection that the intersection of the lines was not in the square raises a close question of fact, but in our judgment the court correctly decided that the crossing of the lines was in the square and correctly counted the ballot for the appellee.

In ballot 1089, precinct 24, the initials of the judge on the ballot were partially obliterated by some sealing wax

being dropped on them and by a hole which was punched in the ballot, probably in stringing it. Enough of the initials still appear, however, to justify the counting of this ballot for the appellee, as the court did.

Ballot 103, precinct 8, and ballot 535, precinct 10, were much like ballot 231, precinct 3. Ballot 103 was counted for the appellant and 535 for the appellee, correctly.

Ballot 267, precinct 6, was objected to by the appellee because the marks in the square in front of the appellant's name do not cross. The lines were somewhat blurred but they did cross in the square, and the ballot should have been counted for the appellant instead of being rejected.

Ballot 263, precinct 8, had a name written on its back, which had lines drawn through it but was not obliterated. It was a distinguishing mark, and the court properly refused to count it for the appellant. *Tandy* v. *Lavery*, 194 Ill. 372.

In ballot 596, precinct 10, a broad, black mark made by a pencil, blacking out substantially the right half of the square before the appellant's name and extending a short distance both above and below the square, is crossed by two pencil marks extending from the middle of the appellant's first name to and beyond the square. One line crosses the square at about its middle line and the other crosses the perpendicular mark below the square. The result would not be called a cross anywhere but on a ballot. Besides the mayor there were four commissioners, a police magistrate and a clerk of the city court to elect, but the only mark on the ballot is the smear on and in the vicinity of the square before the appellant's name. However, giving the voter the benefit of his probable intention and of the doubt, there is some reason for calling the mark a cross, and the court should have counted it for the appellant.

Ballot 543, precinct 12, has a V-shaped mark in the square in front of the appellant's name. The lines do not cross, and the court properly sustained the appellee's objection to it.

Ballot 151, precinct 23, was objected to by the appellee because there was no cross in the square before the appellant's name. The lines in the square do not cross, but the appellee says they make a mark in the form of an inverted T, and a T has been held to be a cross in *Slenker* v. *Engel*, 250 Ill. 499, *Brents* v. *Smith, supra,* and *Hodgson* v. *Knoblauch,* 268 Ill. 315. The character in this case is not a T. It more nearly resembles a Y, and a Y is not a cross. (*Atwater* v. *Eckard, supra.*) The objection of the appellee was properly sustained.

Ballot 268, precinct 23, has only a blurred perpendicular mark in the square before the appellant's name and there is no cross, as he claims. The appellee's objection was properly sustained.

Ballot 463, precinct 25, contains only one line in the square before the appellant's name and not a character similar to a T, and the objection was properly sustained.

Ballot 535, precinct 26, was properly rejected on the appellee's objection. The character in the square is a V and not a cross.

Ballot 979, precinct 27, is a vote for the appellant, but it has a cross made by two lines on its back partially obscuring the word "twenty," printed as the number of the precinct, and this is considered to be a distinguishing mark. *Stevenson* v. *Baker, supra.*

To the following ballots objections were made by the appellee on account of the character of the marking in the square before the appellant's name:

Ballot 453, precinct 1, had three lines in the square and two of them crossed. It was properly counted.

Ballot 649, precinct 1. Here, also, there was a cross, and the ballot was properly counted.

Ballot 217, precinct 1. The intersection was in the square, and the objection was properly overruled.

Ballot 387, precinct 2. The mark in the square is the figure "1," with no semblance of a cross. The objection should have been sustained and the ballot rejected.

Ballot 668, precinct 5. The intersection of the lines was outside the square. The ballot was improperly counted.

Ballot 130, precinct 6. There was no cross in the square. The court erred in counting the ballot.

Ballot 188, precinct 6. The squares before both names are a mere smudge, with no distinguishable cross. The ballot should not have been counted.

Ballot 103, precinct 8. There was a cross in the square, and the ballot was properly counted.

Ballot 463, precinct 9. The objection made is that the character is a V, but both lines appear on both sides of the intersection, and the ballot was properly counted.

Ballot 782, precinct 11. There were two objections to this ballot: First, that the crosses are made of several lines; second, that being so made they are distinguishing marks. Neither of the objections is valid. (*Tandy* v. *Lavery, supra.*) The ballot was properly counted.

Ballot 811, precinct 11, has a cross in the square opposite the appellant's name. The half of the square between one of the diagonal lines and the corner is blackened. The cross is visible, and the ballot was properly counted for the appellant.

Ballot 314, precinct 14. The lines cross in the square, and the vote was properly counted for the appellant.

Ballot 1138, precinct 14, is objected to because the character in the square is a V. The lines cross, and the vote was properly counted for the appellant. To ballot 474, precinct 16, the same objection was made. In this case the lines do not cross, and the vote was improperly counted for the appellant. To ballot 205, precinct 19, there was the same objection—that the lines did not cross. The character in the square in this case was a Y, and the ballot was erroneously counted for the appellant.

In ballot 472, precinct 19, there is a cross in the square opposite the appellant's name, and the ballot was properly counted for him.

In ballot 189, precinct 21, the character opposite the appellant's name is an inverted Y, and the ballot was improperly counted for him.

In ballot 68, precinct 22, the lines of the V in the square opposite the appellee's name cross, and it was properly counted for him.

In ballot 107, precinct 22, there is a cross in the square opposite the appellant's name, and it was properly counted for him.

In ballot 240, precinct 22, the marks on the ballot are blurred, making a dot at the intersection of the cross, but the cross is there, and the ballot was properly counted for the appellant.

Ballot 296, precinct 22. A part of the square and the markings in it have been erased, so that it is impossible to say that there is a cross in the square. It was improperly counted for the appellant.

In ballot 326, precinct 22, the lines of the V cross. The objection was properly overruled and the ballot counted for the appellant.

Ballot 24, precinct 23. There is a cross in the square, and the ballot was properly counted for the appellant.

Ballot 65, precinct 23. The same condition exists as in ballot 24, and the vote was properly counted for the appellant.

The objections to ballots 354, 501, 886 and 1038, precinct 24, and ballots 187 and 597, precinct 25, that the characters in the squares are not crosses, were properly overruled and the ballots counted for the appellant.

Ballot 222, precinct 27. The character in front of the square is a Y, and the ballot was improperly counted for the appellant.

Certain other ballots were counted by the court for the appellant over the appellee's objections that they had distinguishing marks on them:

Ballot 531, precinct 1, was counted for the appellant. The square in front of the appellee's name was blackened out and from it a pencil mark extended downward to the square opposite the appellant's name. The appellee objected to the ballot that this was a distinguishing mark. We do not so regard it. It is a mark which might readily have been made by the pencil used in blackening out the upper square and might easily have been made unintentionally.

Ballot 354, precinct 2. At the top of this ballot appeared two oblique pencil lines. We do not regard them as distinguishing marks. They were probably made by a judge or clerk in the process of counting.

Ballot 432, precinct 3. A diagonal line appears in the square in front of the name of Hayward, who was one of the candidates for commissioner, and attempts appear to have been made to rub it out. It was not a distinguishing mark, and the ballot was properly counted.

Ballot 610, precinct 3, has on its back the figures "92." They were probably placed there as a memorandum during the counting of the ballots, and the ballot was properly counted.

Ballot 619, precinct 3, has the square before the name of Barclay, a candidate for commissioner, blackened out, and from its left side a pencil mark is drawn down to the square opposite the name of candidate Biever, where there is a cross. It is obvious that the voter first marked the ballot for Barclay and afterward blackened out the vote and added the line to indicate the mistake, and it was properly counted.

Ballot 191, precinct 6, was properly counted for the appellant. The ballot has a single diagonal line in the square opposite the appellee's name, and a line drawn through the appellee's name has been erased and to the right of the name, in parenthesis, is written the word "mistake." It is clear that this is not a distinguishing mark. The voter started to mark his ballot in the wrong square

and then drew the line through the appellee's name, which he afterwards erased and wrote the word "mistake" to explain the situation.

Ballot 175, precinct 6, has a cross before the square opposite the name of Biever, a candidate for commissioner. This is not a distinguishing mark. The cross is irregular, there are several lines and a general blurred appearance, but nothing to indicate that that arose out of anything except the awkwardness of the voter in marking his ballot.

In ballot 317, precinct 8, the cross opposite the appellant's name was made with a blue pencil and other crosses with a black pencil. It is contended that the blue cross distinguished the ballot. We have held to the contrary. *Rexroth* v. *Schein*, 206 Ill. 80; *Grubb* v. *Turner*, 259 id. 436.

Ballot 381, precinct 9, was voted for the appellant alone. From the square opposite the appellant's name a waving line straggles down the margin a short distance. Apparently it was carelessly made. It was not a distinguishing mark, and the ballot was properly counted.

Ballots 7, 189 and 508, precinct 10, have distinguishing marks and were improperly counted. Ballot 7 has crosses to the right of the names of the candidates on the ballot for mayor and commissioner for whom the elector voted. Ballot 189 has a black mark with irregular edges following the name of the appellant, and ballot 508 has crosses before the squares opposite the names of the four candidates for commissioner for whom the elector voted.

In precinct 11 a number of ballots had figures on them, in some cases accompanied by the letters "OK" or the word "check," or both, and such of the ballots as were voted for appellant the appellee objected to and such of them as were voted for the appellee the appellant objected to. These ballots were of the same class. The figures and letters were put on them by the judges and clerks in the process of counting the ballots, and the court correctly held all these ballots valid.

Ballot 299, precinct 14, had to the left of the square opposite the appellant's name two crosses and to the left of the square opposite the name of a candidate for commissioner three crosses. These were distinguishing marks, and the ballot was improperly counted for the appellant.

Ballot 1141, precinct 14, is of the same kind as ballot 191, precinct 6. The elector placed a cross in the square opposite the name of candidate Thelen and wrote after the name words indicating a mistake. The ballot was properly counted for the appellant.

Ballot 461, precinct 15, is objected to on the ground that there are marks and lines, apparently placed there by the voter, which can serve only to distinguish the ballot. The only marks are two short pencil marks, such as might result from carelessness and no doubt were inadvertently made, and the ballot was properly counted.

Ballots 482, 759 and 897, precinct 15, have distinguishing marks on them, the first two being a cross and the last a diagonal line following the appellant's name. They were improperly counted for the appellant.

Ballot 616, precinct 15, is said to have a line above and to the right of the name of the candidate Applequist. We do not find this mark. The ballot was properly counted.

Ballot 630, precinct 17, has the distinguishing mark of a cross placed to the right of the name of the candidate Truemper. It was improperly counted for the appellant.

Ballot 373, precinct 18, and ballot 174, precinct 20, are each distinguished by a mark consisting of a cross to the right of the appellant's name, and were improperly counted for him.

Ballot 202, precinct 21, has a diagonal line on the right side of the ballot, evidently placed there by inadvertence, without purpose of any kind. It was properly counted for the appellant.

Ballot 333, precinct 23, has a cross to the right of the appellant's name, and was improperly counted for him.

On the face of ballot 609, precinct 24, appear the figures "35," which is doubtless a memorandum made during the count. We have held that such figures do not constitute distinguishing marks, and the ballot was properly counted.

Ballot 150, precinct 25, has a scroll or mark of many lines made to the left and slightly below the words, "For Mayor." It serves no useful purpose to explain the voter's intention but constituted a distinguishing mark, and was improperly counted for the appellant.

Ballots 111, 105 and 233, precinct 27, have distinguishing marks of crosses, one above the square before the appellee's name, one to the right of the name of candidate Barclay and the other to the right of the name of candidate Wetz. They were improperly counted.

Ballots 192, 293, 320 and 631, precinct 27, are also said to have distinguishing marks, but we do not find them. They were properly counted.

Ballot 11, precinct 3, has on its back names with lines drawn through them, but the names are still legible. These are distinguishing marks. *Atwater* v. *Eckard, supra.*

Ballot 121, precinct 5, has the square opposite the appellee's name almost obliterated by erasure. A mark appears close to the place where the top line of the square would have been, which the appellee says is a cross in the place where the square had been. It appears to be simply a check-mark, and the ballot was properly rejected.

Ballot 120, precinct 7½. The mark in the square opposite the appellee's name is a Y. The lines touch but do not cross, and the ballot was properly rejected.

Ballot 189, precinct 11. The intersection of the lines in the square opposite the appellee's name is near the bottom line of the square but below it, and the ballot was therefore properly rejected.

Ballot 300, precinct 12, has in the square before the appellee's name two lines meeting to form a V but not crossing. The ballot was properly rejected.

Ballot 139, precinct 14, has a character in the square which is a Y, and the ballot was properly rejected.

Ballot 152, precinct 23, is of the same character as ballot 139. The lines do not intersect, and the ballot was properly rejected.

As the result of our examination of the individual ballots each party loses 23 ballots from the number counted for him by the county court and the appellant gains one. Deducting from the 9359 votes counted by the county court for the appellee the 23 votes improperly counted for him, and from the 9355 votes counted by the county court for the appellant the 23 votes improperly counted for him, less the one which the county court improperly rejected, leaves 9336 votes for the appellee and 9333 votes for the appellant. The appellee was therefore elected mayor by a majority of three.

The judgment of the county court is affirmed.

*Judgment affirmed.*